UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
HARVEY L. GREENBERG, Esq., as Guardian                       :
of the Property of Adrienne Sealy a/k/a Adrian               :
Sealy a/k/a Adrienne Sealey Hardesty a/k/a                   :    **MEMORANDUM**
Adrian Sealy                                                 :    **DECISION AND ORDER**
                                                             :
                                 Plaintiff,                  :
                                                             :    09 Civ. 4347 (BMC)
              - against -                                    :
                                                             :
JOEL BLAKE, et al.                                           :
                                                             :
                                 Defendants.                 :
------------------------------------------------------------ X

**COGAN**, District Judge.

Plaintiff alleges that two of the 15 defendants forged the signatures of his conservatee and her parents, thereby stealing three pieces of real estate, after which the two miscreants mortgaged and sold the real estate and disappeared with the money. The bulk of the relief sought is the unwinding of the initial and subsequent conveyances, and the remaining 13 defendants are either notaries public who notarized the fraudulent deeds, or subsequent transferees or mortgagees, none of whom are alleged to have had any role in, or knowledge of, the forgeries.

Plaintiff alleges 15 claims for relief over his 65-page complaint. Federal jurisdiction is predicated only on the fifteenth, which invokes the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) ("RICO"). However, plaintiff has failed to adequately allege an enterprise under RICO, and has offered no indication that he has sufficient information to make such allegations. Because this is merely a common law fraud case, defendants' motions to dismiss are granted.

# BACKGROUND

This case concerns the allegedly fraudulent transfers of three properties from Adrienne Sealey ("Adrienne"), a mentally ill woman, and her parents, Ruby and Thomas, to Jeffrey Spencer ("Spencer") and Joel Blake ("Blake"). The three Brooklyn properties at issue are 987 Bedford Avenue ("987 Bedford"), 385 Classon Avenue ("385 Classon"), and 387 Classon Avenue ("387 Classon"). The allegations as to each follow the same pattern – a transfer from the Sealeys to Blake and then to Spencer, who then sold to a third party or took out a large mortgage. Plaintiff claims that the Sealeys' signatures on the deeds transferring ownership to Blake were forged or that he somehow took advantage of Adrienne's incapacitated state in order to swindle her out of the properties for far less than their actual worth.

## A. The scheme

The scheme commenced with two deeds dated January 17, 2002. One deed transferred ownership of 987 Bedford from Adrienne, Ruby and Thomas (Thomas had died two years earlier), to Blake in exchange for $65,000.[1] The other deed transferred ownership of 385 Classon from Ruby and Adrienne to Blake for nominal consideration. Blake completed his fleecing of the Sealeys by deed dated June 7, 2002, which gave him title to 387 Classon in exchange for $75,000. Defendant Hassal Sule notarized the deeds transferring 987 Bedford and 387 Classon from the Sealeys to Blake. Defendant Kamal Soni notarized the 385 Classon deed. Although executed in 2002, the deeds were not recorded until years later (the deeds to 987 Bedford and 387 Classon were recorded on December 20, 2006; the deed to 385 Classon was recorded on September 11, 2007).

---

[1] In the state court guardianship proceeding, plaintiff states that Ruby died on March 9, 2005. Adrienne is the sole heir to her parents' estate.

With little, if any, money changing hands, within a one-week span in July 2007, Spencer had taken title to all three properties. First, on July 19, 2007, Blake transferred 987 Bedford and 387 Classon to Spencer for nominal consideration. Soni notarized both deeds. Then, by deed dated July 23, 2007, Blake transferred 385 Classon to Spencer, again for little or no consideration. Defendant Jude Desir notarized the deed.[2] This time, the deeds were recorded shortly after execution. The deed to 987 Bedford was recorded on August 15, 2007; the deed to 387 Classon was recorded the next day, on August 16, 2007; finally, the deed to 385 Classon was recorded on September 24, 2007.

With all three properties in Spencer's hands, he and Blake began cashing out. They took out a $400,000 mortgage on 387 Classon on August 30, 2007, and then a $500,000 mortgage on 987 Bedford on November 16, 2007, both from defendant Bank of America. 987 Bedford has not changed hands since and the mortgage remains unsatisfied. Spencer received a profit on 387 Classon, selling it to defendant Gursim Holding for $990,000 on October 18, 2007. Gursim Holding financed the purchase with an $800,000 mortgage from defendant SKC Corporation, which assigned it to defendant Ramapo Realty on January 25, 2008. Defendant Manjeet Bawa, the principal of Gursim Holding, transferred title to defendant Sonia Bawa, his wife and an officer in the company, on February 15, 2008. On January 30, 2008, Spencer sold 385 Classon to defendant Guarantee Homes for $400,000, which used the property to take out a $538,000 mortgage and a $960,000 line of credit from defendant Ramapo Realty, which had assumed the mortgage on 387 Classon five days earlier. Three months later, on April 28, 2008, Guarantee Homes transferred title to 385 Classon to defendant Northeast NY, another company controlled by the same man, defendant Yosef Aberjel.

---

[2] None of the three notaries have been served.

3

**B.     The enterprise**

Plaintiff claims that defendants Blake and Spencer were engaged in a scheme to defraud the Sealeys of their real estate holdings and then sell the properties for a profit in violation of 18 U.S.C. § 1962. Blake and Spencer both constituted and headed the alleged enterprise, whose goal was to get the properties for as little money as possible and then sell or mortgage them for as much money as possible.[3] Plaintiff's complaint and other papers are silent as to the structure of the Blake-Spencer enterprise, alleging only that they worked together to defraud Adrienne. Plaintiff has not set forth any details as to the internal organization of the alleged enterprise; the role either party played; the means or methods by which the enterprise operated; or how the profits were distributed between the parties. Plaintiff points to nothing other than the fact that Blake transferred the properties to Spencer for less than plaintiff asserts they were worth as evidence that the two were in league with each other. Additionally, the acts of the enterprise are not distinguished from those of the individuals.

Plaintiff specifically limits the enterprise to Blake and Spencer, alleging that "the activities of 'Blake' and 'Spencer' are an enterprise." The complaint makes no allegations that any of the other 13 defendants had any role in the enterprise.[4] Moreover, several of the named

---

[3] In a "Summary of the Complaint" filed by plaintiff on December 15, 2009, he explains that "The RICO count has its genesis in a closed enterprise between Blake and Spencer to deprive Sealey of the [] properties." In an accompanying footnote, he specifies that "Blake and Spencer are at the center of a scheme whereby they took advantage of Sealey's de facto incapacity and mental illness and recorded deeds on which the Sealey[s'] signatures were forged on each of the initial deeds and then resold the properties for a large profit."

[4] Plaintiff's theory seems to be that the secondary transferees were negligent or willfully blind in not investigating the transfers between Blake and the Sealeys. "The lack of fair consideration, the forgeries of grantors' signatures, irregularities in recording, failure to pay City and State transfer taxes, [] should have put subsequent transferees and mortgagees on notice to investigate the circumstances surrounding the transfer of these properties." In his opposition to defendants' motion, plaintiff states that there was no title insurance procured before any of the deed transfers, implying that doing so would have disclosed the fraudulent underlying transfers. Based on these allegations, plaintiff has sued the secondary transferees under common law theories.

4

defendants are described as victims of the Blake-Spencer enterprise. Plaintiff states that Spencer profited by taking out $900,000 worth of mortgages from Bank of America on 987 Bedford and 387 Classon, which he later sold to Gursim Holding for $590,000 more than he owed. In other words, one member of the enterprise, Spencer, allegedly profited off of two other defendants, Bank of America and Gursim Holding.[5] Gursim Holding, which paid $990,000 for 387 Classon,[6] financed the acquisition with an $800,000 mortgage from defendant SKC Corporation.

## DISCUSSION

### A. Subject matter jurisdiction

"Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area Sch. Dist., 475 U.S. 534, 541, 106 S.Ct. 1326, 1331 (1986). Accordingly, at the outset of every case, the court must assure itself that it has authority to hear the matter. See id. (quoting Mitchell v. Maurer, 293 U.S. 237, 244, 55 S.Ct. 162, 165 (1934)). Although often confused, or commingled in the RICO context, subject matter jurisdiction is a distinct inquiry, requiring only that the complaint set forth a federal question, from that of whether a party has set forth sufficient allegations to state a claim. Town of West Hartford v. Operation Rescue, 915 F.2d 92, 99-100 (2d Cir. 1990) (dismissing RICO claim for lack of jurisdiction where defendant's theory of loss of property was "blatantly implausible"). "If the complaint raises a federal question, the mere claim confers power to decide that it has no

---

[5] Although the complaint alleges that Spencer sold 385 Classon for $400,000, plaintiff neither includes that sale as one of the enterprise's acts nor claims that Spencer profited from it, even though he bought the property from Blake for nominal consideration. Including this exchange would mean that Spencer profited at the expense of a third defendant, Guarantee Homes.

[6] As plaintiff notes in his "Summary of Complaint," defendants Bank of America, Leaf Funding, and Ramapo Realty continue to hold mortgages on the properties.

merit, as well as to decide that it has. In the words of Mr. Justice Holmes, 'if the plaintiff really makes a substantial claim under an act of Congress there is jurisdiction whether the claim ultimately be held good or bad'." Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co., 341 U.S. 246, 249, 71 S.Ct. 692, 694 (1951) (internal alteration omitted) (quoting The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25, 33 S.Ct. 410, 411 (1913)). The requirements for subject matter jurisdiction are lower than those for pleading a viable claim; only when "patently frivolous or wholly insubstantial" may the court dismiss for lack of jurisdiction. Giulini v. Blessing, 654 F.2d 189, 192 (2d Cir. 1981) (citing Hagans v. Lavine, 415 U.S. 528, 542-43, 94 S.Ct. 1372, 1382 (1974)).

### B. Failure to state a claim

The standard of review for a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is well known and need only be restated briefly. The plaintiff is required to set forth "a short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545, 127 S.Ct. 1955, 1959 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 103 (1957)) (alteration in original). This requires alleging "enough facts to state a claim to relief that is plausible on its face," meaning that plaintiff has made enough factual statements that, if all were taken as true, the court could reasonably infer that defendant is liable. Id. at 570, 127 S.Ct. at 1974. As the Second Circuit has explained, Twombly "require[s] enough facts to 'nudge [plaintiffs'] claims across the line from conceivable to plausible'." In re Elevator Antitrust Litigation, 502 F.3d 47, 50 (2d Cir. 2007) (quoting id.). When determining the sufficiency of a complaint on a motion to dismiss, the court accepts as true all well-pleaded allegations in the

complaint and draws all reasonable inferences in favor of the non-moving party. See Conley, 355 U.S. at 45-46, 78 S.Ct. at 103.

Generally, leave to amend should be freely granted. Where, however, the problems with the causes of action are "substantive" and would not be cured with "better pleading," repleading would be futile and any such request should be denied. Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

## C. RICO

"In order to state a RICO racketeering claim, a plaintiff must allege that a defendant, 'employed by or associated with' an enterprise affecting interstate or foreign commerce, conducted or participated in the conduct of this enterprise's affairs 'through a pattern of racketeering activity'." S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir. 1996) (quoting 18 U.S.C. § 1962(c) and Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983)). "[A] pattern of racketeering activity consists of at least two acts of racketeering activity (often referred to as the 'predicate acts') within a ten year period." Lugosch v. Congel, 443 F. Supp. 2d 254, 264 (N.D.N.Y. 2006) (citing 18 U.S.C. § 1961(1), (5)). Although mail and wire fraud are included as racketeering activity, common law fraud is not. Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir. 1999).

RICO's enterprise requirement is construed broadly, encompassing "any individual, partnership, corporation, association, or other legal entity, [or] any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4); see Boyle v. United States, 129 S. Ct. 2237, 2243 (2009). It is essential that the enterprise be distinct from the individuals comprising it: "[T]o establish liability under § 1962(c) one must allege and prove the existence

of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 161, 121 S.Ct. 2087, 2090 (2001); Wild Edibles, Inc. v. Indus. Workers of the World Local 460/640, 07-CV-9225, 2008 WL 4548392, at *1 (S.D.N.Y. Oct. 9, 2008) (explaining that in order to state a claim under RICO, plaintiff must allege that "the conspirators formed and organized a separate entity (whether formal or informal) on whose behalf they acted; it is not enough if they merely acted together to commit the wrong."). There is no requirement that the enterprise be a "business-like entity," but it must have a structure, which consists of "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Boyle, 129 S. Ct. at 2243-244.

An association-in-fact enterprise is "a group of persons associated together for a common purpose of engaging in a course of conduct," which is "proved by evidence of ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." United States v. Turkette, 452 U.S. 576, 583, 101 S. Ct. 2524, 2528 (1981). When determining whether a complaint has adequately alleged an association-in-fact enterprise, the Second Circuit has directed that courts "look to the 'hierarchy, organization, and activities' of the association to determine whether 'its members functioned as a unit'." Conte v. Newsday, Inc., 06-CV-4859, 2010 U.S. Dist. LEXIS 28502, at *11 (E.D.N.Y. March 25, 2010) (quoting First Capital Asset Mgmt., Inc. v. Satinwood, Inc., 385 F.3d 159, 174-75 (2d Cir. 2004) (citations and quotations omitted)). In his pleading, the plaintiff "must provide solid information regarding the hierarchy, organization, and activities of the alleged enterprise, from which [the court] could fairly conclude that its members functioned as a unit. . . Lack of proof of such an independently existing separate enterprise dooms a RICO claim." Wild Edibles, 2008 WL

8

4548392, at *1 (citations and internal quotation marks omitted) (dismissing RICO action where facts alleged in complaint showed only "labor organizers using a secondary boycott to compel union recognition"). See, e.g., Smartix Intern. Corp. v. MasterCard Intern. LLC, 355 Fed. App'x. 464 (2d Cir. 2009) (finding enterprise allegations insufficient where plaintiff claimed that its marketing executive, in his professional capacity "hit it off" with representatives of two credit card officials acting in their official capacities).

These "dual requirements of (1) distinctness and (2) the proof needed to demonstrate an association-in-fact, work in tandem to weed out claims dressed up as RICO violations but which are not in fact." City of New York v. Smokes-Spirits.Com, Inc., 541 F.3d 425, 447 (2d Cir. 2008), rev'd on other grounds, Hemi Group, LLC v. City of New York, 130 S. Ct. 983 (2010). Accordingly, in First Capital Asset Mgmt., the Second Circuit held that plaintiffs failed to make the specific allegations required to satisfy RICO's enterprise requirements where they did not point to "solid information regarding the hierarchy, organization, and activities of this alleged association-in-fact enterprise, from which the court could fairly conclude that its members functioned as a unit." 385 F.3d at 174-75 (internal citations and alterations omitted). Without such allegations in the complaint, there was nothing upon which the court could base a conclusion that the separate constituent entities were part of a larger enterprise. "Plaintiffs' conclusory naming of a string of entities does not adequately allege an enterprise." Id. at 175 (internal quotations omitted).

After alleging that an enterprise exists as a distinct entity, the plaintiff must then tie the individual defendant to the operations or management of the enterprise. A defendant is only liable as a member of a RICO enterprise if the plaintiff has alleged that he "conducted or participated directly or indirectly in the conduct of the enterprise's affairs through a pattern of

9

racketeering activity," or, as commonly stated, that the defendant "participated in the operation or management of the enterprise." Id. at 175-76 (internal alterations omitted) (quoting Reves v. Ernst & Young, 507 U.S. 170, 177-79, 113 S. Ct. 1163 (1993) and Azrielli v. Cohen Law Offices, 21 F.3d 512, 521 (2d Cir. 1994)).

**D.    Analysis**

As an initial matter, plaintiff's RICO claim meets the minimal requirements for federal subject matter jurisdiction. Subject matter jurisdiction requires only that the complaint set forth a federal question, which it clearly does in fifteenth count. Where, as here, plaintiff's allegations are not "blatantly implausible," the complaint may satisfy the minimal requirements of subject matter jurisdiction but still fail to state a viable claim. Compare Wild Edibles, 2008 WL 4548392, at *1-2 (dismissing RICO complaint for failure to state a claim because allegations were insufficient to allege that enterprise existed distinct from individual defendants) with Operation Rescue, 915 F.2d 92 (dismissing RICO complaint for lack of subject matter jurisdiction where plaintiff failed to "present[] even minimally plausible claims" of racketeering activity or injury to business or property, two required elements).

Plaintiff's allegations are, however, insufficient to overcome defendants' motion to dismiss for failure to state a claim. Although plaintiff does not specify which substantive RICO provision defendants have violated, his claim fails under any because he has not adequately alleged an enterprise. Plaintiff alleges that Spencer and Blake were an enterprise and that they "engaged in real estate acquisition and development involving forgery and fraud by taking advantage of SEALY, an [sic] de facto mentally ill incapacitated [sic] and mentally ill person." There is nothing in the complaint or any of the other papers submitted by plaintiff to demonstrate

10

that a RICO enterprise exists distinct from these two individuals. Plaintiff's allegations are that the individuals Blake and Spencer conducted wrongful acts together. Nowhere does he allege a separate entity.

Even when plaintiff alleges that the RICO enterprise was an association-in-fact, a group of individuals that were associated with each other but not a legal entity, he must still show that the individual defendants formed a separate entity. "The enterprise must be separate from the pattern of racketeering activity, and distinct from the person conducting the affairs of the enterprise." First Capital Asset Mgmt., 385 F.3d 173 (internal citation omitted). "[I]t is not enough if they merely acted together to commit the wrong." Wild Edibles, 2008 WL 4548392, at *1 (quoting SmokesSpirits.Com, 541 F.3d at 451); see Continental Finance Co. v. Ledwith, 08-CV-7272, 2009 WL 1748875, at *5 (S.D.N.Y. June 22, 2009) (finding allegations of association-in-fact insufficient where plaintiffs only alleged that together defendants engaged in predicate acts). Failure to distinguish the individual defendants from the alleged enterprise is fatal. See Cedric Kushner Promotions, 533 U.S. 158, 121 S.Ct. 2087 (reaffirming the "basic principle" that a valid RICO complaint must allege the "existence of two distinct entities," and finding that requirement satisfied by allegations against an individual who was the principal and sole shareholder of a corporation, because "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status"); Zito v. Leasecomm Corp., 02-CV-8074, 2003 U.S. Dist. LEXIS 17236, at *17 (S.D.N.Y. Sept. 30, 2003) (explaining that defendant-corporation "cannot itself be both the enterprise and a defendant charged with operating the enterprise").

Additionally, there is nothing in the complaint to provide the requisite "solid information" about the enterprise's "hierarchy, organization, and activities." Wild Edibles, 2008 WL 4548392, at *1 (quoting SmokesSpirits.Com, 541 F.3d at 451). Conclusory allegations that there was an enterprise are wholly insufficient. Cf. United States v. Coonan, 938 F.2d 1553, 1560 (2d Cir. 1991) (finding sufficient proof of enterprise where former members testified about enterprise's hierarchy, operations, and activities). The extent of plaintiff's allegations are that Blake and Spencer were in league with each other. His pleadings are entirely silent as to the internal workings or organization of the alleged enterprise, explaining neither how it was run nor by whom. See, e.g., First Capital Asset Mgmt., 385 F.3d at 174-75 (finding association-in-fact enterprise allegations insufficient because, without "any solid information regarding the hierarchy, organization, and activities" the court could not "fairly conclude that its members functioned as a unit," and therefore lacked any "basis to support the conclusion that the supposed constituent entities of the Vahabzadeh Enterprise were associated together for a common purpose of engaging in a course of conduct.") (internal citations and quotations omitted); Singh v. Parnes, 199 F. Supp. 2d 152, 162-63 (S.D.N.Y. 2003) (finding plaintiff's enterprise allegations insufficient where, "other than conclusory allegations, nothing in the complaint addresses the relationships among defendants in a manner that distinguishes between the 'enterprise' and the 'person' who conducted the affairs of the enterprise through a pattern of racketeering" and failed to describe the enterprise's internal workings "or that the alleged members functioned as an integrated unit").

Plaintiff's contention that he has adequately alleged an association-in-fact akin to that found to constitute a RICO enterprise in Boyle is unavailing. In Boyle, the Supreme Court distinguished an informal association-in-fact from a more formal business-like entity, but

reiterated the requirements that a RICO enterprise have "an ascertainable structure beyond that inherent in the racketeering activity." The informal group that the Supreme Court found constituted an association-in-fact had planned and executed dozens of thefts from bank night-deposit boxes over a nine-year period. In addition to this peculiar target, there was proof that the group gathered before each theft to plan, collect tools, and assign the role that each member would play. If successful, they split the loot. This is far more than the threadbare assertion plaintiff makes that the Court should infer the existence of an enterprise from the transfers of the three properties from Blake to Spencer. Cf. Zito, 2003 U.S. Dist. LEXIS 17236, at *19-22 (discussing the requirements for alleging an association-in-fact enterprise and finding plaintiff's allegations sufficient where, "[f]airly read, the complaint alleges that MFI/Leasecomm's primary customers were marketers of dubious products by fraudulent means, and that the supposedly independent businesses defendants reference in their argument functioned as an integrated system for fleecing the unwary"). Plaintiff has not presented anything upon which the Court could base a conclusion that Blake and Spencer worked together in a coordinated fashion; neither details of their plotting nor evidence that they split the profits. See, Singh, 199 F. Supp. 2d 152. Accepting plaintiff's argument, any two thieves in cahoots would constitute an association-in-fact. This would eliminate not only the distinction between "merely act[ing] together to commit the wrong" and "form[ing] and organiz[ing] a separate entity" but also the pleading requirements as to the organization's structure. See Wild Edibles, 2008 WL 4548392, at *1 (quoting SmokesSpirits.Com, 541 F.3d at 451).

Although plaintiff requests leave to amend, his proposed amendments do not address the deficiencies in the enterprise allegations, but rather in his allegations of predicate acts, which defendants have also challenged. Because the Court rejects the sufficiency of the enterprise

allegations, it has no need to determine the sufficiency of the predicate act allegations. Therefore, granting plaintiff leave to amend would be futile.

## CONCLUSION

For the reasons set forth above, the Complaint is dismissed against all defendants for failure to state a claim upon which relief can be granted. The Court declines to exercise its supplemental jurisdiction over plaintiff's state law claims, which are dismissed without prejudice. 28 U.S.C. § 1367(c)(3).

**SO ORDERED.**

s/Hon. Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       June 8, 2010